**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 21, 2013**

# In the Court of Appeals of Georgia

A12A2340. CAUSEY v. THE STATE.

BRANCH, Judge.

Omar Daetz Causey was tried by a Clayton County jury and convicted of two counts of aggravated assault (OCGA § 16-5-21 (a)) and a single count each of making terroristic threats (OCGA § 16-11-37 (a)), criminal trespass (OCGA § 16-7-21 (a)), and theft by taking (OCGA § 16-8-2). He now appeals from the denial of his motion for a new trial, asserting that his trial counsel was ineffective for failing to request a mistrial after learning of improper contact between two jurors and a spectator at the trial. We find no error and affirm.

When we consider a claim of ineffective assistance, we defer to findings of fact made by the trial court unless they are clearly erroneous, but we review the trial

court's application of the law to those facts *de novo. Ferguson v. State*, 307 Ga. App. 232, 237 (2) (704 SE2d 470) (2010).

The facts relevant to this appeal are undisputed and show that on the second day of jury deliberations, juror number 53 failed to appear at the court house. The clerk of court attempted to contact him, and reached a man who identified himself as the juror's brother. The brother stated that the juror "had something else to do this morning," but that the brother would try and reach him. After reporting these facts to the parties, the trial court asked if they had any objection to replacing juror number 53 with the alternate juror. Causey, his lawyer, and the prosecutor all agreed to the substitution of the alternate juror for juror number 53. At that point the substitution occurred, and the jury was told to resume deliberations. Less than ten minutes later, the jury foreperson reported to the bailiff that the alternate juror had just told the rest of the jurors about contact between the alternate, juror 53 and a trial spectator, whom the alternate believed was a supporter of Causey's. The court thereafter questioned both the jury foreperson and the alternate juror under oath and in the presence of the parties.

According to the alternate juror, on the previous evening he and juror 53 were leaving the courthouse together when they saw a man they recognized as being

2

"affiliated with" Causey getting into his car. The man asked the jurors if they had reached a verdict, but the jurors did not respond and continued walking to their own car. The court asked the alternate juror if, as a result of the encounter in the parking lot, he felt "intimidated in any way." The alternate juror responded, "Oh, no" and also testified that the encounter would not affect his ability to remain fair and impartial.

Because the testimony of both the alternate juror and the foreperson established that the alternate juror had related the incident in the parking lot to the rest of the jury, the trial court decided to ask all the jurors regarding their ability to remain fair and impartial. Specifically, the trial court asked the jury: "Based upon whatever was said in the jury room this morning about whatever happened last night and that incidental contact, is there any one of you that cannot be a fair and impartial juror as a result of that? If so, please raise your hand." After noting that no hands were raised, the court sent the jurors back out to resume their deliberations. The court then asked the parties if they had any objections to the procedure that had just occurred, and both the prosecutor and Causey's attorney affirmatively stated that they had no objection.

On appeal, Causey argues that his attorney's failure to move for a mistrial based upon the improper encounter between juror number 53 and the alternate juror and the

spectator believed to be affiliated with Causey constituted ineffective assistance of counsel, and that he was therefore entitled to a new trial. We disagree.

To prevail on a claim of ineffective assistance, Causey bears the burden of proving both that the performance of his lawyer was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). If Causey cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong. *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011). Here, we find that Causey failed to establish that his lawyer's performance was deficient.

In determining whether defense counsel afforded his client adequate representation, "we bear in mind that 'judicial scrutiny of counsel's performance must be highly deferential.' *Strickland*, 466 U. S. at 689 (III) (A)." *Arnold v. State*, _ Ga. _ (2) (a) (Case No. S12A1669, decided January 7, 2013). Thus,

> [t]o demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness. Such a defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness

4

of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case.

(Citation, punctuation and footnote omitted.) *Smith v. State*, 302 Ga. App. 128, 133 (2) (690 SE2d 449) (2010).

The law in Georgia is that where there has been an improper communication between a juror and a third party, there arises a presumption of harm to the defendant "and the burden is on the State to show the lack thereof." (Citation and punctuation omitted.) *Ledford*, 264 Ga. 60, 65 (9) (439 SE2d 917) (1994). We will not disturb a jury verdict solely because of such improper communication, however, unless it involved statements that were so inherently prejudicial to the defendant "that the verdict must be deemed inherently lacking in due process." (Citation and punctuation omitted.) *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996). And where "the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant." (Punctuation and footnote omitted.) *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). We find that to be the situation here.

The communication at issue involved a spectator asking two jurors whether a verdict had been reached in the case and no response by the jurors to the question. It

did not involve extrajudicial information, a discussion of the facts or legal issues in the case, or improper conduct by the jurors themselves. Additionally, the juror who testified about the communication stated that he did not perceive it as threatening or intimidating and that it would not affect his ability to decide the case fairly and impartially. Similarly, all of the remaining jurors indicated that their knowledge of the communication would have no impact on their ability to remain fair and impartial during their deliberations. Under these circumstances, we find that the communication itself was "inherently innocuous" and did not prejudice Causey. *Ledford*, 264 Ga. at 65 (9) (no prejudice to defendant where spectator asked juror "can you hear okay?"). See also *Sims*, 266 Ga. at 420 (3) (no reversible error arising out of juror misconduct by violating court orders not to discuss the case because the substance of the communication was established without contradiction and the statements "did not involve extrajudicial information, or demonstrate that they were deliberating the case prior to the close of evidence, or that one juror was attempting to persuade another on any issue or testimony in the case"); *Henry v. State*, 265 Ga. 732, 738 (7) (a) (462 SE2d 737) (1995) (no harm to defendant as a result of sequestered juror's unauthorized contact with girlfriend where facts established that their conversation did not involve a discussion of the merits of the case); *Huff v. State*, 239 Ga. App. 83, 87-

6

88 (3) (519 SE2d 263) (1999) (defendant suffered no prejudice where, contrary to court's instructions, jurors had a general discussion about the case during a trial recess; the jurors were interviewed and "stated that they could remain impartial and that the conversation did not influence their final decisions in the case").

Given these facts, trial counsel did not perform deficiently when he failed to move for a mistrial. The proceedings below show "that the limited contact between [the spectator and juror number 53 and the alternate juror] was not prejudicial to [Causey], and trial counsel could not have expected to prevail on a motion for mistrial on that account. [And] [f]ailure to pursue a futile motion does not constitute ineffective assistance." (Punctuation and citation omitted.) *Dowels v. State*, 289 Ga. App. 369, 373 (2) (657 SE2d 279) (2008) (affirming trial court's finding that defense counsel's failure to move for a mistrial, based on improper communication among jurors and an out-of-court communication between a juror and a witness for the state, did not constitute ineffective assistance of counsel).

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*