310 Ga. 748
FINAL COPY

S21A0381. MIDDLEBROOKS v. THE STATE.

BETHEL, Justice.

Deshaun Middlebrooks appeals his convictions for malice murder and other crimes in connection with the shooting death of Quintavious Barber and the aggravated assault of Keundre Chappell.[1] Middlebrooks contends that the trial court erred in

___

[1] The crimes occurred on January 25, 2017. In March 2017, a Henry County grand jury indicted Middlebrooks and Tory Jaleel Jones for malice murder of Barber (Count 1), felony murder based on aggravated assault of Barber (Count 2), aggravated assault of Barber (Count 3), aggravated assault of Chappell (Count 4), aggravated battery of Chappell (Count 5), and possession of a firearm during the commission of a felony (Count 6). Jones was also charged individually with possession of less than an ounce of marijuana (Count 7). His case is not part of this appeal. A jury jointly tried Middlebrooks and Jones in October to November 2018 and found them both guilty on all counts. The trial court sentenced Middlebrooks to life in prison without the possibility of parole on Count 1, twenty years concurrent on Count 3, twenty years consecutive to Count 1 on Count 4, and five years consecutive to Count 4 on Count 6. The trial court vacated Count 2, and purported to merge Count 5 into Count 4, although it appears the inverse would have been the proper action. See *Welch v. State*, 309 Ga. 875, 880 (4) (848 SE2d 846) (2020). However, as this merger error does no harm to Middlebrooks and the State has not raised it by cross-appeal, we decline to correct the error. See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017). On November 29, 2018, Middlebrooks filed a motion for new trial, which was subsequently amended. The trial court denied the motion for new trial on August 10, 2020. Appellate counsel filed a

denying his motion to exclude evidence of gang activity and that he received constitutionally ineffective assistance of trial counsel. Because Middlebrooks' conviction for the aggravated assault of Barber should have merged into the malice murder conviction, we vacate the conviction and sentence for that count. Otherwise, we affirm.

1. Evidence presented at trial showed that Barber was a member of the Bloods street gang — specifically, a subset called "Sex Money Murder" — and that Tory Jones and Middlebrooks were also members of that same subset. In January 2017, Barber sent out a message to some of his contacts indicating that he was looking to trade his rifle for two pistols. One person responded that he or she knew someone who would be interested in the exchange and provided Middlebrooks' number. Another person messaged Barber to let him know that he or she and a fellow gang member each had a pistol to trade for the rifle. Barber then met with Jones and traded

timely notice of appeal on August 14, 2020. This case was docketed in this Court to the term commencing in December 2020 and submitted for a decision on the briefs.

2

a rifle for the two pistols. However, after the trade, both Jones and Barber were dissatisfied. Barber told the contact who organized the exchange that he felt that they had tried to "slime" or "rob" him.

Barber eventually agreed to meet with Jones to get back the rifle he had traded. Barber reassured his concerned friend, Keundre Chappell, that the trade would be fine because Barber and Jones were members of the same gang. Additionally, a "big homie" (i.e., Middlebrooks) who was "over" other gang members, was coming. On January 25, Barber and Chappell met Jones and Middlebrooks in a parking lot for the trade. Middlebrooks exited his car and began speaking with Barber by the car's trunk. Jones also exited the car, greeted Barber, and returned to sit in the car. Chappell, who felt uneasy, backed away from the group to stand some distance away. Barber asked for his rifle that he had exchanged, and Middlebrooks told Jones to open the trunk. Jones replied that he could not find the trunk-release button, so Middlebrooks walked toward the driver's side door to open the trunk. As soon as the trunk opened, Middlebrooks started shooting at Barber and Chappell. Chappell

3

was shot in his left hand and fell to the ground between two cars. Chappell saw Barber run past him, and he got up and started running behind him. Chappell and Barber ran to a nearby apartment, where Barber collapsed on the floor. Barber had been shot six times and died from his injuries. Middlebrooks later told Chappell's cousin, who shared his dorm in jail, that he shot Barber because Barber moved from a subset of the Eastside Bloods to Sex Money Murder, and because Barber, who was his subordinate in the gang, did not give him a gun.[2]

2. Prior to trial, Middlebrooks filed motions to exclude any evidence regarding his gang participation or activity as improper character evidence under OCGA § 24-4-404 (b), irrelevant, and highly prejudicial. The trial court denied Middlebrooks' motions following a pre-trial hearing and ruled that the gang evidence was admissible because it was intrinsic to the crimes charged.

---

[2] Middlebrooks does not argue that the evidence was insufficient to support his convictions, and because this case was docketed to the term of Court that began in December 2020, we do not review that issue sua sponte. See *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020).

Middlebrooks argues that the trial court abused its discretion in denying his motions and that as a result, the trial was "riddled" with gang evidence and references to gang activity including during voir dire questioning, opening statements, witness examinations, and closing statements. As explained below, we conclude that the trial court did not abuse its discretion by admitting this evidence at trial.

(a) Middlebrooks argues that the gang evidence was not relevant because the State did not charge him with a violation of the Georgia Street Gang Terrorism and Prevention Act, there was no evidence of ongoing gang activity, the State did not adequately prove that Middlebrooks was a gang member, and the evidence was unnecessary to prove motive. We disagree.

> Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.

(Citation and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). In applying these factors, this

5

Court has previously noted that

> evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citation and punctuation omitted.) Id. at 485-486 (IV) (d). "It is within the trial court's sound discretion to determine whether to admit such evidence, so we review a trial court's ruling admitting evidence as intrinsic for an abuse of that discretion." (Citation and punctuation omitted.) *Harris v. State*, 310 Ga. 372, 377 (2) (b) (850 SE2d 77) (2020).

Here, the State presented evidence from which the jury could conclude that Middlebrooks and Barber were active gang members in the same gang and that Middlebrooks was motivated to shoot Barber because of a perceived disrespect. The challenged gang evidence thus plainly pertained to the chain of events in the case and was linked in time and circumstance with the charged crimes, making the information necessary to complete the story for the jury.

See *Williams*, 302 Ga. at 486 (IV) (d). See also *Harris*, 310 Ga. at 378-379 (2) (b) ("necessary" evidence is that which is "reasonably necessary" to help the jury understand the sequence of events, not that which is "strictly necessary"). Further, even in the absence of a gang-related charge, evidence of gang activity or affiliation may still be admissible to show motive. See *Armstrong v. State*, __ Ga. __, __ (2) (a) (__ SE2d __) (2020). Accordingly, Middlebrooks' arguments lack merit.

(b) Middlebrooks also argues that evidence of his gang involvement was more prejudicial than probative and was also inaccurate. Under OCGA § 24-4-403 ("Rule 403"), "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Although "evidence of gang membership can be highly prejudicial[,]" all inculpatory evidence is inherently prejudicial; "it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." (Citation and punctuation omitted; emphasis in original.) *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017).

7

Intrinsic evidence must satisfy Rule 403. See *Williams*, 302 Ga. at 485 (IV) (d).

Here, the trial court did not abuse its discretion in determining that the probative value of the gang evidence in establishing the context and motive for the charged offenses was not substantially outweighed by the danger of unfair prejudice. See *Anglin*, 302 Ga. at 337 (3) (probative value of evidence of defendant's alleged gang membership outweighed danger of unfair prejudice where evidence was relevant and probative of motive). Additionally, any alleged inaccuracies or objections raised on appeal by Middlebrooks with respect to the credibility of the gang evidence went not to the evidence's admissibility but rather its weight, which is for the jury to resolve. See *Davis v. State*, 272 Ga. 327, 330 (4) (528 SE2d 800) (2000) (discrepancy in witness testimony went to weight and credibility of evidence rather than its admissibility). Thus, the trial court did not abuse its discretion in admitting the evidence Middlebrooks complains about on appeal.

3. Middlebrooks next argues that he received constitutionally

ineffective assistance because his trial counsel should have retained an expert on gangs to advance the defense's theory that the shooting was not actually gang-related and that Chappell was the aggressor in the shooting. Middlebrooks argues that his trial counsel was not prepared to defend Middlebrooks or to explain the gang evidence because trial counsel failed to retain such an expert. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was constitutionally deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U. S. 668, 687-696 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688 (III) (A). This requires a defendant to overcome the "strong

presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

"[T]he decision whether to present an expert witness, like other decisions about which defense witnesses to call, is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." (Citation and punctuation omitted.) *Sullivan v. State*, 308 Ga. 508, 512 (2) (b) (842 SE2d 5) (2020). See also *Thomas v. State*, 284 Ga. 647, 650 (3) (b) (670 SE2d 421) (2008). Here, trial counsel admitted at the motion for new trial hearing that she did not anticipate the introduction of gang-related evidence and therefore did not retain an expert witness. But the inquiry focuses

on what a reasonably competent attorney may do under the circumstances. See *Chavez v. State*, 307 Ga. 804, 811 (2) (b) (837 SE2d 766) (2020) (trial counsel's own assessment of his performance does not control; rather, to establish that trial counsel was deficient, the appellant has to show that "no reasonable attorney" would have taken the same course of action as trial counsel). And although expert testimony might have been helpful in rebutting the evidence of gang activity and affiliation presented by the State at trial — as the expert that new counsel retained attacked the reliability of the State's gang evidence at the hearing on the motion for new trial — competent trial counsel could have reasonably determined that calling a gang expert to testify at trial might have served only to emphasize evidence that Middlebrooks was involved in a gang, which was key to the State's theory for Middlebrooks' motive. Rather than attack such evidence with an expert, competent trial counsel could have reasonably decided to attack the gang evidence in other ways, including by cross-examining the State's witnesses who testified about gang activity and by arguing to the jury that the gang

11

evidence was not credible or accurate, as trial counsel did here. Accordingly, because Middlebrooks cannot establish that his trial counsel performed deficiently, this enumeration fails. See *Stripling v. State*, 304 Ga. 131, 139 (3) (b) (816 SE2d 663) (2018) (counsel could reasonably decide not to call competing expert witness and instead focus on cross-examination of State's witness); *Matthews v. State*, 301 Ga. 286, 289 (800 SE2d 533) (2017) (counsel reasonably determined not to call expert witness and focused on cross-examination and argument to advance defense theory).

4. Finally, although not raised as error by Middlebrooks, we have identified a sentencing error. The trial court sentenced Middlebrooks for both the malice murder and aggravated assault of Barber. But, as charged in the indictment, the malice murder charge and the aggravated assault charge were both based on the gunshot that killed Barber. In light of the jury's verdicts, the trial court should have merged the count for the aggravated assault of Barber with the conviction for his malice murder. Because it did not, we vacate Middlebrooks' conviction and sentence for the aggravated

assault of Barber. See *Lumpkin v. State*, 310 Ga. 139, 152 (4) (849 SE2d 175) (2020).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED FEBRUARY 1, 2021.
Murder. Henry Superior Court. Before Judge Amero.
*Manning Peace, Holly Y. Peace*, for appellant.
*Darius T. Pattillo, District Attorney, Sharon L. Hopkins, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.