**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2022**

# In the Court of Appeals of Georgia

A22A0546. TAYLOR v. THE STATE.

GOBEIL, Judge.

A Fulton County jury found Clarence Taylor guilty of one count of child molestation. He now appeals from his judgment of conviction and the denial of his motion for new trial, arguing that: (1) the trial court erred in finding that a witness did not improperly bolster the victim's testimony; (2) he received ineffective assistance of counsel; and (3) the trial court erred in failing to grant a new trial on the general grounds. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." *Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015) (citation and punctuation omitted).

So viewed, the record in this case shows that, in 2004, Taylor lived with his then-wife, Geraldine, at a home in Fulton County. Taylor has an adult son, Christopher Taylor, who has two children with Maurissa Woodring. Woodring has another daughter, A. A., who is the victim in this case. When A. A. was young, she and her sisters occasionally would spend time at Taylor's house when their mother worked. The three sisters often bathed together, including at Taylor's house. One evening in 2004, when A. A. was eight years old, after the girls finished their bath, Taylor told the other two girls to stay in another room, and he took A. A. into the living room alone. A. A. was wearing only a towel. Geraldine usually was present when Taylor was babysitting the girls, but she was not home on this evening. Taylor told A. A. to lie down, began putting lotion on A. A., and eventually used his hands to touch her thighs and the outside of her vagina. Taylor asked her if it "felt good," and she said yes. A. A., however, "knew something wasn't right about" what had happened to her, and began to cry. Taylor held her, and A. A. could feel that he had an erection.

A. A. reported the incident to her mother, Woodring, and from that day on, the girls did not return to Taylor's house, although they still saw him at family gatherings. Woodring decided not to pursue any criminal charges at that time.

Eventually, however, A. A. heard that her step-cousin, J. T., went through something similar with Taylor, and A. A. decided to report the incident to law enforcement, roughly twelve years after it occurred.

Based on A. A.'s report, a criminal indictment was brought against Taylor, charging him with one count of child molestation. At trial, A. A. testified to the facts as stated above. Woodring testified that one day, she was talking about sending the kids back to Taylor's house, and A. A. pleaded with her not to send her there because "Granddaddy touches [her]." Woodring testified to A. A.'s account of the touching, which included that Taylor had brushed his thumb across her vagina while he was putting lotion on her after a bath. Woodring stated that A. A. did not give her an exact date for the incident, but from then on, Taylor was never alone with the girls.

A psychotherapist, Anique Whitmore, testified as an expert witness in child sexual abuse, psychotherapy, and trauma. Whitmore testified generally that it is difficult for young children to disclose sexual abuse and it is not uncommon to delay disclosure. She also testified specifically about her opinion of A. A.'s disclosure, stating that A. A.'s tentative disclosure to her mother just after the incident combined with A. A.'s discovery that another family member made a report about Taylor to the police were pieces to the "puzzle" of A. A.'s decision to come forward so long after

the incident. Specifically, Whitmore testified that these factors "len[t] validity to" A. A.'s outcry and report. At that point, defense counsel objected that Whitmore was commenting on the credibility of the victim witness. The trial court overruled the objection, and Whitmore finished her testimony, explaining the kinds of details she would expect to see in the description of a years-old trauma memory and the general developmental characteristics of an eight-year-old.

The State also presented the testimony of J. T., A. A.'s cousin. J. T testified that when she was 11 years old, her grandfather, Taylor, moved her shorts to the side and took pictures of her private area. She stated that it happened three or four times in total. J. T. eventually reported the behavior to her mother, who took her to speak to law enforcement. Based on the incident with J. T., in December 2017, Taylor pleaded guilty to one count of child molestation. Taylor's plea was taken pursuant to *North Carolina v. Alford*, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

At the close of the trial, Taylor was convicted as charged. He filed a motion for new trial, which as amended, raised the grounds now at issue on appeal. After a hearing, the trial court denied Taylor's motion. The instant appeal followed.

1. Taylor first asserts that the trial court erred in finding that the expert witness Whitmore's testimony did not improperly bolster A. A.'s testimony. We find no reversible error.

Taylor argues that in a case such as this, where the credibility of the victim witness is paramount to the State's case due to the lack of physical or other corroborating evidence, the harm from bolstering the witness is great.

> The credibility of a witness, including a victim witness, is a matter for the jury's determination under proper instruction from the court. It is well established that a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury.

*Bly v. State*, 283 Ga. 453, 459 (3) (660 SE2d 713) (2008) (citations and punctuation omitted). We review evidentiary rulings for abuse of discretion. *State v. Parks*, 350 Ga. App. 799, 807 (830 SE2d 284) (2019).

The testimony at issue comes from Whitmore's response to the prosecutor's question about her opinion of the nature of A. A.'s delayed disclosure. Whitmore stated:

> When I look at any case, I look at it as a piece of the puzzle and what makes sense. And so, the information I was given to review, the way in

5

which the disclosure came about fit into that puzzle of a delayed disclosure, a tentative disclosure back when she was originally eight, knowing that there are other disclosures similar to what she experienced that were very consistent with what she is reporting she experienced also, which lends validity to her outcry or report of. And so, that's based on . . .

At that point, trial counsel interrupted her with an objection, which the trial court overruled.

In its order on Taylor's motion for new trial, the trial court determined that Whitmore's testimony was not improper because she was merely opining that "the victim's behavior in disclosing the abuse was consistent with sexual abuse," relying upon *Chamberlain v. State*, 347 Ga. App. 775, 782-783 (3) (b) (819 SE2d 303) (2018). See also *DiPietro v. State*, 356 Ga. App. 539, 544-545 (2) (a) (848 SE2d 153) (2020) (expert witness's testimony that she found no "red flags" to indicate deception or fabrication in the victim's forensic interview did not directly comment on the victim's credibility nor on the ultimate issue of the defendant's guilt). Taylor argues, however, that *Chamberlain* does not control in this case because Whitmore's testimony went beyond explaining A. A.'s behavior, and commented directly on her credibility. See *Gilmer v. State*, 339 Ga. App. 593, 595 (2) (a) (794 SE2d 653) (2016)

6

(expert witness's testimony that the way the victim described his abuse in his forensic interview "adds credibility to what [the victim] was saying" was improper bolstering); *Al-Attawy v. State*, 289 Ga. App. 570, 572 (1) (657 SE2d 552) (2008) (expert witness's testimony that she found the victim's "disclosure to be credible" was improper bolstering).

Assuming without deciding that Whitmore's testimony was improper, we conclude that this testimony did not contribute to the verdict. Here, where Taylor's counsel properly objected at trial, the standard for assessing the harm of the alleged error in Taylor's case is as stated in *Bly*, 283 Ga. at 460 (3): whether it is "highly probable that the error did not contribute to the jury's verdict." See also *McGarity v. State*, 311 Ga. 158, 167-168 (3) (856 SE2d 241) (2021) (to determine whether improper bolstering requires reversal, "we must determine whether it is highly probable that the error did not contribute to the jury's guilty verdict" without relying upon the bolstered testimony).[1]

---

[1] The State concedes that the trial court applied the incorrect standard in assessing harm in its order on Taylor's motion for new trial. However, a determination of harm is a legal conclusion that we review de novo and thus remand is not necessary. *Venturino v. State*, 306 Ga. 391, 393 (2) (830 SE2d 110) (2019); *McGarity*, 311 Ga. at 159 (1) n. 2.

7

The State's case did rely heavily upon A. A.'s testimony, and by extension her general credibility. However, there was significant additional evidence supporting Taylor's conviction, including Woodring's testimony that corroborated A. A.'s account of molestation, J. T.'s testimony that Taylor also molested her, and Taylor's guilty plea to one count of child molestation against another victim.

Significantly in this case, when assessing harm, we also look to the context of the challenged testimony within the witness's testimony and within the trial as a whole. Here, there was a significant delay between the alleged abuse and the disclosure to law enforcement, a fact that was central to Taylor's defense at trial. Indeed, in his opening statement, Taylor argued that the delay in reporting the incident to law enforcement "create[d] doubt" as to A. A.'s account of molestation.

Whitmore's roughly twenty-five (25) pages of testimony focused on child psychology and why there is often a significant delay between abuse and a victim's disclosure. In an effort to explain the delay here, Whitmore recounted that A. A. made a "tentative" disclosure to her mother at the time of the incident, but "unfortunately nothing happened legally." However, once A. A. learned that Taylor was accused of

molestation by another family member, she may have believed "it's okay to go to the police. This isn't an odd occurrence." Putting together the "puzzle" pieces of "what makes sense," Whitmore opined that the factors she observed in her review of the record "len[t] validity" to A. A.'s delayed report or outcry. Although Whitmore's use of the words "lends validity" to describe her opinion of A. A.'s statement was questionable, it was but "a single comment within the psychologist's otherwise appropriate discussion of the various indicia by which a disclosure of abuse may be assessed[,]" and was specifically tailored to explaining the delay in reporting, an issue that was central to the trial. *Al-Attawy*, 289 Ga. App. at 573-574 (1).

Further, unlike the improper testimony in *Gilmer* and *Al-Attawy*, Whitmore did not use the words "credibility" or "credible" in Taylor's trial. She did not testify as to whether she believed A. A.'s outcry, nor whether she believed Taylor was guilty. See *Branesky v. State*, 262 Ga. App. 33, 36 (1) (a) (584 SE2d 669) (2003) (context of challenged testimony is important to harm analysis, whether contested remark commented directly on allegations is relevant). These factors further minimize the testimony's impact.

And, although the trial court overruled defense counsel's objection to Whitmore's testimony, Whitmore did not return to the subject of A. A.'s disclosure

9

after the objection, moving on to discuss general matters of child psychology. During closing arguments, defense counsel put the issue of A. A.'s credibility directly to the jury, pointing to inconsistencies between her and her mother's testimony about the event, and questioning why A. A. delayed her report. Given the evidence at trial, the isolated nature of the alleged harm, and trial counsel's efforts to undermine A. A.'s credibility to no avail, we are confident that any error in Whitmore's testimony did not contribute to Taylor's verdict. Thus, we affirm the trial court's order denying him a new trial on this issue.

2. Taylor next asserts that trial counsel was ineffective in failing to request a jury instruction on *North Carolina v. Alford*.

As described above, Taylor entered a guilty plea pursuant to *Alford* in December 2017. He pleaded guilty to one count of child molestation, based on his committing an indecent act toward J. T. by removing her clothes and looking at her genitals. He was sentenced to 20 years, but was allowed to serve that sentence on probation. A certified copy of the conviction was admitted into evidence during J. T.'s testimony. The investigator who investigated the incident with J. T. also testified, and on cross-examination, she explained that Taylor's plea stated that it was taken pursuant to *Alford*, but she was unfamiliar with what that meant. Trial counsel also

10

asked Taylor's ex-wife, Geraldine, about the significance of the guilty plea being made pursuant to *Alford*, but she was likewise unaware of its meaning. During counsel's questioning of both witnesses, the trial court sustained objections to additional questions concerning the significance of *Alford*.

During closing arguments, the State stated that an *Alford* plea is also known as a "best-interest plea," and that "it was in [Taylor's] best interest to plead guilty." The State also stated that Taylor molested J. T., and "he pled guilty to it." In his closing argument, trial counsel expanded on the *Alford* concept, stating that the State had left out "that a defendant is not admitting to the allegations" in an *Alford* plea and that Taylor pleaded guilty "to avoid the risk of going to trial." Taylor now argues that, because the explanations of the significance of the *Alford* plea were inconsistent, trial counsel should have requested a jury instruction to provide the jury with a clear and concise statement of the law.

To prevail on a claim of ineffective assistance of counsel, Taylor must prove both that his lawyer's performance was deficient and that he suffered prejudice as a result of this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If Taylor cannot meet his burden of proving either prong of the *Strickland* test, then we need not examine the other prong.

11

*Causey v. State*, 319 Ga. App. 841, 842 (738 SE2d 672) (2013). "The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." *Johnson v. State*, 214 Ga. App. 77, 78 (1) (447 SE2d 74) (1994) (citations and punctuation omitted).

Here, although trial counsel testified at the motion for new trial hearing that there was no specific strategic reason behind failing to request a jury instruction on the *Alford* plea, he also testified that he did not want to draw any additional attention to the guilty plea, and he believed that he sufficiently raised the issue as to whether Taylor had actually admitted to molesting J. T. in his questioning of witnesses and during closing argument. Given trial counsel's explanation, we cannot say that no reasonable trial attorney would have pursued such tactics. See *Middlebrooks v. State*, 310 Ga. 748, 752 (3) (854 SE2d 503) (2021) (counsel's decision not to call expert witness to rebut State's gang-related evidence was reasonable, as "competent trial counsel could have reasonably decided to attack the gang evidence in other ways," including through cross-examination and closing argument); *Jones v. State*, 280 Ga. 205, 207 (2) (b) (625 SE2d 1) (2005) (counsel's decision not to request limiting instruction so as not to draw attention to a defendant's prior conviction was

12

reasonable). Accordingly, we affirm the trial court's denial of Taylor's motion for new trial on this claim. *Causey*, 319 Ga. App. at 842; *Johnson*, 214 Ga. App. at 78 (1).

3. Finally, Taylor asserts that the trial court erred in not granting a new trial on the general grounds because the "evidence weighed strongly against a finding of guilt." We disagree.

The trial court in this case recited the proper standard under OCGA §§ 5-5-20 and 5-5-21, acted as a thirteenth juror, and found that "the verdict [was] not contrary to the evidence or decidedly and strongly against the weight of the evidence." We do not review the merits of a trial court's exercise of discretion as the thirteenth juror. *Dunlap v. State*, 351 Ga. App. 685, 687 (2) (832 SE2d 667) (2019) ("this court does not sit as an arbiter of the general grounds, which are solely within the discretion of the trial court.") (citation and punctuation omitted). "There is nothing in the record to suggest that the trial court did not properly exercise its discretion, and without more, we assume that the trial court applied the correct standard in upholding the verdict." *Smith v. State*, 354 Ga. App. 782, 784 (841 SE2d 444) (2020). Accordingly, Taylor has shown no error for this claim.

For the reasons set forth above, the trial court's order in this case is affirmed.

13

*Judgment affirmed. McFadden, P. J., and Pinson, J., concur.*