**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 24, 2022**

# In the Court of Appeals of Georgia

A22A0645. TAYLOR v. THE STATE.

BROWN, Judge.

A jury found G. W. Taylor guilty of reckless driving, improper stop on a roadway, failure to maintain lane, and driving under the influence ("DUI") of alcohol less safe.[1] Taylor appeals, asserting that the trial court committed reversible error by admitting evidence that he refused to submit to a breath test and by instructing the jury that it could infer the presence of alcohol from his refusal. Taylor also asserts that he received ineffective assistance of counsel during the exercise of peremptory strikes during jury selection. Based upon the Supreme Court of Georgia's opinion in *Elliot v. State*, 305 Ga. 179 (824 SE2d 265) (2019), we reverse Taylor's DUI less safe

---

[1]The trial court merged the improper stop and failure to maintain lane guilty verdicts, but its sentencing order fails to state into which conviction these counts merged (reckless driving or DUI less safe).

conviction. We affirm his reckless driving conviction and remand the case for resentencing of the improper stop and failure to maintain a lane verdicts as we cannot determine whether the trial court merged them into the DUI less safe conviction or the reckless driving conviction. See *Prickett v. State*, Ga. (4) (Case No. S22A0531, decided August 23, 2022) (remanding case to trial court for resentencing and decision as to which verdicts should be merged).

The State presented evidence showing that on August 6, 2016, around 3:00 a.m., a patrol officer observed a vehicle parked perpendicular across both lanes of traffic. When the officer approached the vehicle, it began to reverse, then drive forward, stopping just short of a ditch. After the vehicle reversed again to get back into a lane of travel, it started traveling toward the officer's patrol car. The officer activated his emergency lights and blocked all lanes of travel. The officer testified that the "vehicle stopped just short of striking" his patrol car. The officer then approached the vehicle and initiated a conversation with the driver, later identified as Taylor, who had "noticeably slowed and slurred speech," along with "bloodshot watery eyes." The officer testified that these observations "are consistent with the consumption of alcohol in a DUI investigation" and prompted his request for Taylor to exit the vehicle. After Taylor left the vehicle, he "was unable to stand up by

2

himself" and "stumbl[ed] a lot." At one point, the officer and his corporal, who also was present, caught Taylor as he lost his balance to prevent him from falling into the nearby ditch.

When the officer asked Taylor to perform sobriety evaluations to ensure that he was safe to drive, Taylor responded that he was "going to jail anyway," but ultimately agreed. The officer then attempted to conduct a walk-and-turn field sobriety test, but Taylor, who was shoeless, was unable to keep his feet together to perform the test. As Taylor's feet had to be separated due to his swaying and leaning, the officer terminated the test because he "didn't want anyone to get hurt and I knew that I wouldn't get good feedback." For the same reason, the officer also declined to conduct any other field sobriety tests, such as the one-leg stand test, and placed Taylor under arrest. While Taylor was being booked at jail, the booking officer marked "no" beside a form statement that read "Any signs/history of drug use?" The arresting officer testified that this form is normally completed "based on talking to the defendant."

The officer, who had one year of experience as a police officer, admitted at trial that after he terminated the walk-and-turn field sobriety test, no other tests were performed and his investigation ceased. He did not ask Taylor whether he had

consumed any alcohol or drugs that evening and did not "observe an odor of alcohol" on Taylor. He was not aware of any alcoholic beverages in Taylor's possession or in his vehicle. The officer did not attempt a Horizontal Gaze Nystagmus test because he lacked the training to administer it. Even though his patrol car would have been equipped with an Alcosensor, he did not use it because his "whole investigation for DUI . . . stopped" once he determined "it was unsafe to move forward." When pressed during cross-examination as to why he had not used the Alcosensor, the officer replied

> I rarely employ the Alcosensor. . . . So if I know it's alcohol, I have no reason to provide an Alcosensor if I believe it's going to antagonize or otherwise excite a person. If I'm using it as a tool to detect alcohol, I use it, and it's a very useful tool. In this case I believed it was alcohol, and didn't see a reason to use it. Normally, I would have employed it prior to doing evaluations.

The officer testified that based on his whole investigation, he "had . . . reason to believe [Taylor] was under the influence of alcohol, not drugs," reasoning that he could distinguish between someone who is under the influence of alcohol versus drugs because "there are different signs and symptoms for alcohol consumption and

4

drug consumption. Pupils restrict more on drugs, slurred speech — different things with alcohol and drugs, that are solely alcohol." The officer explained:

> Everyone processes alcohol differently and drugs differently, so there's different signs in different people and different tolerances. Generally, alcohol would have slurred speech, slowed reaction time, imbalance, inability to function quickly and efficiently, and overall everything slows down. Different drugs could speed you up, some of them slow you down. They'll affect your eyes. There's all kinds of different things that can be affected by drugs and alcohol.

Based upon his conclusion that Taylor was under the influence of alcohol, the officer sought Taylor's consent for a breath test, rather than blood or urine, which Taylor refused.

At trial, Taylor's wife, who is a physician assistant, provided an alternative explanation for Taylor's behavior during the DUI investigation. Taylor's wife met him on August 9, 2016, three days after the DUI investigation, and the couple moved in together at the end of 2016. After the couple moved in together, Taylor's wife observed that he "stumbles in the middle of the night" and "gets up and has some pretty odd behaviors that are pretty concerning. . . ." Taylor's wife stated the she has observed this odd behavior "[a]t least a half of dozen times." She explained that "he stumbles every morning when he gets up[, and it's] pretty consistent that he has

5

disequilibrium. He knocks into furniture, walls. I've seen him hit his head on the oven range numerous times and cupboards." She stated that

> [t]he most concerning incident to me was an episode where I woke up to find him in the closet. He was disoriented, and I tried to coax him out of the closet. [He] was not coherent, but he was courteous. He disagreed that we were in a closet, but he was preoccupied with trying to remove an imaginary stain from one of my items of clothes.

After observing this odd behavior, Taylor's wife referred him to the Veterans Affairs hospital for an evaluation, where he was screened. While Taylor's wife was not permitted to testify about any diagnosis related to his screening, the State asked numerous questions about traumatic brain injury during its cross-examination. Taylor's wife testified that traumatic brain injury can cause slurred speech and a flushed face, but she was not aware of traumatic brain injury causing bloodshot, watery eyes.

The State initially charged Taylor with driving under the influence of alcohol less safe in violation of OCGA § 40-6-391 (a) (1), and later filed an amended accusation, adding charges of one count of reckless driving in violation of OCGA § 40-6-390, one count of improper stopping on a roadway in violation of OCGA § 40-6-123 (c), and one count of failure to maintain lane in violation of OCGA § 40-6-48.

6

At trial, Taylor's counsel did not object to the officer's testimony that Taylor refused to submit to the breath test. During the jury charge conference, the trial court proposed a pattern jury charge that permitted the jury to infer the presence of alcohol from a breath test refusal.[2] Taylor objected to this charge for "appeal purposes," but it was overruled. The State made Taylor's refusal a central part of its closing argument and told the jury that it could infer the presence of alcohol from Taylor's refusal of the breath test.

1. In related enumerations of error, Taylor argues that the trial court erred in allowing the State to present evidence of his refusal to submit to a breath test and in its corresponding jury charge permitting the jury to infer the presence of alcohol from the refusal of the breath test.

Since Taylor did not object to the introduction of the refusal evidence, we review the trial court's admission of the evidence for plain error. See OCGA § 24-1-103 (a), (d); *Hamlett v. State*, 350 Ga. App. 93, 99 (2) (828 SE2d 132) (2019)

---

[2] The charge read as follows:

Should you find that the defendant refused to take the requested test, you may infer that the test would have shown the presence of alcohol, though not that the alcohol impaired his driving. Whether or not you draw this inference is for you to determine. This inference may be rebutted. This inference alone is not sufficient to convict the defendant.

7

("Although [an appellate court] generally review[s] a challenge to [an] evidentiary ruling for abuse of discretion, where, as here, a defendant has not timely objected to the evidence, [the appellate court] review[s] for plain error.") (citation omitted). Similarly, although Taylor objected to the charge on the adverse inference during the charge conference, he failed to object after the jury was so charged. Accordingly, we review the jury charge for plain error as well. See OCGA § 17-8-58 (b); *Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019) ("Because an objection voiced at the charge conference does not preserve objections to the charge as subsequently given, the failure to object to the charge as given precludes appellate review unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.") (citation and punctuation omitted). The test for a finding of plain error has four prongs:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously

8

affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis in original.) *Liggett v. State*, 353 Ga. App. 522, 523 (1) (a) (838 SE2d 608) (2020).

When *Elliott* was decided in February 2019, the Supreme Court of Georgia held that the Georgia Constitution "precludes admission of evidence that a suspect refused to consent to a breath test." 305 Ga. at 223 (IV) (E). Here, the trial court's admission of Taylor's refusal into evidence and the corresponding jury instruction clearly violated *Elliott* and the State concedes this. Thus, the trial court committed an error, and the first prong of the plain error test is satisfied.

Although *Elliott* was decided after Taylor's trial, "whether an error is considered clear or obvious under the second prong of the plain error test is judged under the law existing at the time of appeal, regardless of whether the asserted error in the trial court was plainly incorrect at the time of the trial, plainly correct at the time of trial, or an unsettled issue at the time of trial." (Citation and punctuation omitted.) *Liggett*, 353 Ga. App. at 524 (1) (b). Accordingly, as the State concedes, *Elliott* applies to Taylor's appeal, and the second prong of the plain error test is satisfied.

"The third and fourth prongs require showing that the error affected the appellant's substantial rights, i.e., that it affected the outcome of the trial court proceedings, and that it seriously affected the fairness, integrity, or public reputation of the proceedings." *Liggett*, 353 Ga. App. at 524 (1) (c). Importantly, the "plain-error analysis, which must be distinguished from harmless-error analysis, requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013).

Regarding the DUI less safe charge, the State had to prove that Taylor was under the influence of alcohol to the extent that it was less safe for him to drive. OCGA § 40-6-391 (a) (1). Excluding the evidence of Taylor's refusal, the State's case principally relied on Taylor's unsteadiness, slowed and slurred speech, bloodshot and watery eyes, failed walk-and-turn test, and statement that "I'm going to jail anyway." The State's brief points to similar facts in *Liggett* as support for why the plain error test should fail under the third prong, but *Liggett* is readily distinguishable. In *Liggett*, we held:

> Given this strong independent evidence that Liggett was under the influence of alcohol, including his own admission of recently drinking

10

a beer, and his failure to offer an explanation for his physical manifestations of being under the influence of alcohol,[3] we conclude that he has failed to affirmatively show that evidence that he refused a breath test and a corresponding charge allowing the jury to infer the presence of alcohol probably affected the jury's decision that he was under the influence of alcohol while driving.

(Citation omitted.) 353 Ga. App. at 525 (1) (c).

In the present case, Taylor did not admit drinking alcohol that evening, and he offered an alternative explanation for his conduct. Moreover, the officer did not smell or see any alcohol or administer an available Alcosensor test to detect the presence of alcohol. While Taylor clearly exhibited behavior showing that he was a less safe driver, the State's evidence that Taylor was under the influence of alcohol was weak, at best. Indeed, when Taylor moved for a directed verdict at the close of the State's case, the trial court acknowledged that it was a "very close" call and that was with the benefit of the inference of alcohol from Taylor's refusal. Under these particular facts and circumstances, we conclude that Taylor has met his burden of showing that the use of refusal evidence affected the jury's decision to find Taylor guilty of driving under the influence of alcohol while less safe. Cf. *Porter v. State*, 364 Ga. App. 465

---

[3] Ligget also had open beer bottles in his vehicle. *Ligget*, 353 Ga. App. at 522.

11

(2) (875 SE2d 486) (2022) (applying harmless error standard of review to conclude that defendant was entitled to a new trial after the trial court erred by allowing evidence of defendant's refusal to submit to a breath test).

Under the fourth prong of the plain error test, an appellate court has the discretion to remedy the error upon a determination that "the error seriously affects the fairness, integrity or public reputation of . . . judicial proceedings." (Citation and punctuation omitted.) *Liggett*, 353 Ga. App. at 523 (1) (a). Here, Taylor's constitutional right against compelled self-incrimination was infringed, and the fairness, integrity, and public reputation of the judicial process would be seriously affected if we declined to exercise our discretion to remedy the violation of Taylor's right under the Georgia Constitution. Having found that Taylor has satisfied all four prongs of the plain error analysis, we reverse his DUI less safe conviction.

2. In his remaining enumeration of error, Taylor claims that his convictions should be reversed because his trial counsel provided ineffective assistance of counsel by failing to follow the trial court's instructions to mark the jurors for whom he wanted to exercise his peremptory strikes. We disagree.

The record shows that trial counsel incorrectly marked the jurors he wanted to keep rather than those he wanted to strike as instructed by the trial court. When trial

counsel realized his mistake, he brought it to the attention of the trial court, before the jury was empaneled and sworn, and the trial court instructed counsel to start over with their peremptory strikes. After this process was completed, the court inquired whether there was "[a]ny objection to the manner of the striking," and both counsel for the State and Taylor stated that they had none.

Taylor asserts, without citation to supporting legal authority, that he has been harmed by trial counsel's initial error in exercising his peremptory strikes because "[s]tarting [the selection process] over with the same panel means that the prosecution now is privy to which jurors the defense wants to keep, rather than strike. Jury selection was then required to be performed with the State knowing the identity of the jurors that [trial counsel] wanted to be on the jury. . . ." Taylor's appellate counsel deliberately chose not to call trial counsel as a witness in the motion for new trial hearing.

In order

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient

13

performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Welbon v. State*, 304 Ga. 729, 731 (2) (822 SE2d 277) (2018).

In its order denying Taylor's ineffective assistance of counsel claim, the trial court found:

Assuming, arguendo, that trial counsel's performance was deficient in that he initially misunderstood the indicators for strikes versus acceptances, appellate counsel has failed to demonstrate any resulting prejudice. When trial counsel revealed to the [c]ourt that he had made this error, the [c]ourt directed the trial attorneys to start the selection process over. The State's attorney objected that [d]efense counsel had now seen her strikes, and could adjust his strikes accordingly, but was overruled. There is no evidence that the State's attorney changed her strikes at all in the subsequent jury selection process. There is no evidence of this because it did not happen. The State's attorney used her strikes on the exact same jurors in the second jury selection as she had in the first jury selection. Therefore, the [d]efendant can establish no evidence that the composition of the trial jury was altered to his detriment, and thus no evidence of prejudice that may have influenced the verdict.

14

The same judge that presided over the trial made the finding that the State did not change its strikes. While the record includes a rule nisi scheduling a hearing on the motion for new trial for March 22, 2019, and Taylor admits in his brief before this Court that a hearing was held, the record does not include a transcript of this hearing. In the absence of a transcript, "we must presume that the trial court was authorized to find that appellant failed to carry his burden to show that he received ineffective assistance of counsel[,]" *Hamilton v. State*, 281 Ga. 501 (2) (640 SE2d 28) (2007) (citation and punctuation omitted), particularly in light of our duty to "defer to findings of fact made by the trial court unless they are clearly erroneous[.]" *Causey v. State*, 319 Ga. App. 841 (738 SE2d 672) (2013). As Taylor has failed to show "any other basis for a finding of prejudice under the circumstances of his case[,] his claim of ineffective assistance of counsel fails." *Welbon*, 304 Ga. at 732 (2).

*Judgment affirmed in part and reversed in part, and case remanded for resentencing. Barnes, P. J., and Hodges, J., concur.*