318 Ga. 249
FINAL COPY

S23A1205. PAYNE v. THE STATE.

COLVIN, Justice.

Appellant Austin Levi Payne appeals his convictions for felony murder and other crimes related to the death of one-year-old Journey Cowart ("Journey").[1] On appeal, Appellant contends that

_____

[1] Journey died on January 21, 2014. On September 17, 2014, a Bartow County grand jury charged Appellant and the victim's mother, Brandy Boyd, in a 22-count indictment. Appellant and Boyd were charged with four counts of malice murder (Counts 1-4), six counts of felony murder (Counts 5-10), seven counts of cruelty to children in the first degree (Counts 11-13, 17-20), three counts of aggravated battery (Counts 14-16), and one count of battery (Count 22). Appellant was also separately charged with one additional count of cruelty to children in the first degree (Count 21).

At a jury trial held from May 4, 2015, through May 13, 2015, the jury found Appellant and Boyd guilty of felony murder (Counts 5-10), cruelty to children in the first degree (Counts 11-13, 17, 20), aggravated battery (Counts 14-16), and battery (Count 22) and not guilty of the remaining counts. On July 22, 2015, the trial court sentenced Appellant to life in prison without the possibility of parole for Count 5 (felony murder) with concurrent prison terms of 20 years each for Counts 17 and 20 (cruelty to children in the first degree) and a concurrent prison term of 12 months for Count 22 (battery). The court purported to merge for sentencing purposes all the remaining counts, but some of the counts were actually vacated by operation of law. See *Noel v. State*, 297 Ga. 698, 700 (2) (777 SE2d 449) (2015). Appellant timely filed a motion for new trial on July 22, 2015, and amended it through new counsel on March 4, 2023.

Following a hearing on April 20, 2023, the trial court denied Appellant's amended motion for new trial on May 1, 2023. Appellant timely filed a notice of appeal directed to this Court on May 8, 2023. This appeal was docketed to this Court's August 2023 term and submitted for a decision on the briefs.

the trial court erred by denying his motion for a directed verdict because the evidence was constitutionally and statutorily insufficient to show that he personally injured Journey or was a party to inflicting the injuries that resulted in her death. Appellant further argues that the trial court abused its discretion in excluding evidence of co-defendant Brandy Boyd's drug use and erred in declining his request for a jury charge on grave suspicion. Lastly, Appellant claims that his trial counsel was constitutionally ineffective for failing to move to sever his trial. For the reasons that follow, Appellant's claims fail.

1. Viewed in the light most favorable to the verdicts, the trial evidence showed the following. Journey was born on January 10, 2013, to Brandy Boyd and Blake Cowart. In April 2013, Blake Cowart died. In August 2013, Boyd met Appellant, and the two started dating and moved into an apartment together with Journey.

Multiple witnesses testified to observing bruises on Journey in the months leading up to her death. Four witnesses testified that in late 2013, they observed a bruise on Journey's forehead and that

Boyd's explanation for the bruise was that Journey hit her head on the railing of her crib. A babysitter testified that she saw a bruise on Journey's left cheek that looked like a handprint in November 2013. A friend testified that at some point, she saw a bruise on Journey's ear, which Boyd said had resulted from Journey falling when she pulled up between the coffee table and the wall, and the friend suggested taking Journey to urgent care but was told by Boyd that it was unnecessary. A neighbor testified that, shortly before Journey died, he saw her with bruises on her neck, face, and arms.

On January 13, 2014, a week before Journey died, Boyd asked Mellodie Hunt, Blake Cowart's mother, to watch Journey, who was sick at the time. Hunt noticed bruises on Journey's back and took pictures, which were entered into evidence. Hunt testified that she took the pictures to keep as a record and that she was afraid because she did not know why Journey was so bruised. Hunt shared the pictures only with her husband and daughter, and she told her husband that she was going to call the police if Journey had a new bruise later in the week.

Boyd's mother and stepfather testified that, when they took care of Journey on January 17, 2014, she had a bruised and swollen ear, which Boyd explained was the result of Journey falling when pulling up on a table. That same day, Hunt texted Boyd to confirm that Journey's birthday party would take place the following day. The party was originally scheduled for January 10, 2014, the day of Journey's first birthday, but it was rescheduled to January 18, 2014, because, according to Boyd, Journey was not feeling well. Appellant, Boyd, and Journey did not show up to Hunt's house on January 18. When Hunt texted Boyd to find out where they were, Boyd responded that they were at the doctor's office because Journey was sick with croup. However, medical records showed that Journey never visited her pediatrician or the Floyd County Urgent Care in January 2014. Hunt texted Boyd multiple times over the following days, but Boyd did not respond.

A neighbor testified that on the evening of January 21, 2014, Appellant and Boyd banged on his door, with Journey in Appellant's arms, and asked him to drive them to the hospital because Journey

4

appeared to have stopped breathing. The neighbor agreed and testified that Journey did not look well and that she was "pink" and stiff. Journey was pronounced dead at the hospital at 10:27 p.m. An autopsy report stated that injuries to Journey's head and abdomen were each sufficient on their own to cause her death. The head injuries included a fractured skull, multiple areas of internal bleeding, and four bruises on the exterior of her scalp. The injuries to Journey's abdomen included a torn stomach and liver, a distended stomach, multiple fractured ribs, and several external bruises. The medical examiner testified that the injuries to her head and abdomen were caused by direct force and that CPR could not have caused her abdominal injuries.

In addition to the fatal injuries to her head and abdomen, the autopsy revealed a fractured arm, a fractured leg, a prolapsed rectum, and numerous bruises all over her body. The medical examiner dated the fractured arm as one to two weeks old and the fractured leg as one to six weeks old at the time of death. She opined that a "shearing force," such as someone grabbing and shaking a

5

person's arm or leg, caused the fractures to her arm and leg. The medical examiner was unable to date the injury to Journey's rectum but testified that it was caused by pressure inside her abdomen from her abdominal injuries. She concluded that Journey's death was a homicide, caused by injuries for which there was no plausible explanation nor historical account to suggest an accidental injury.

On the day after Journey died, investigators with the Bartow County Sheriff's Office searched Appellant and Boyd's apartment. Among other things, investigators discovered a bloody bath towel, a bloody baby outfit, and a bloody baby pillow.

That same day, investigators interviewed Appellant and Boyd. Investigators testified that Appellant and Boyd told them the following information about Journey. Appellant said that on January 21, 2014, Journey woke up around 9:00 a.m., and he fed her. Boyd said that an hour later, she attempted to feed Journey, but she refused to eat. Then, they both said that they laid Journey down for a nap. They both told investigators that they woke her up from her nap in the early afternoon and gave her a bath before laying

6

her down for another nap. They both said that at some point, they got her up from her nap and fed her formula because there was no milk in the house. Appellant stated that he later discovered that Journey had spit up some of her formula after having drunk half the bottle, that the formula "smelled bad," and that he thought it was "spoiled milk." Boyd also indicated that she thought Journey had ingested "bad milk," and said that Journey had a "tight" stomach and did not seem to be feeling well. Both Appellant and Boyd said that around 5:30 p.m., they called Appellant's sister, a nurse, to tell her that Journey was throwing up and to get her advice.

They both said that later, Boyd's stepfather dropped off some milk at their apartment. They said that Journey then started eating and drinking milk. They both stated that they put Journey to sleep in her crib in their bedroom. Appellant said that he heard Journey breathing rapidly, so he got her out of her crib, put her in his bed with him, and laid her on his chest. Appellant and Boyd said they both fell asleep in bed and woke up to find that Journey had stopped breathing. Appellant said he attempted to administer CPR, even

7

though he did not know how. Then, they called 911 and ran upstairs, beating on neighbors' doors until they found someone to drive them to the hospital.

Investigators testified that when asked about Journey's previous injuries, Appellant and Boyd told them that Journey injured her ear. Boyd explained that four or five days prior to Journey's death, Journey hit her ear on the coffee table, causing a bad cut. Boyd said that she took Journey to urgent care but did not sign in, as the wait was too long. According to Boyd, a nurse indicated that the cut on her ear would be fine. Appellant said that he bit Journey's shoulder to try to wake her up when she was not breathing and accidentally hit Journey's head on the door leading into the emergency room. Boyd stated that Journey did not go to the doctor regularly, as Journey had never fallen, broken a bone, gotten cut, or been injured, but that she had been to the hospital for a bad cough when she was one month old.

2. Appellant argues that the trial court erred in denying his motion for a directed verdict because the trial evidence was

insufficient as a matter of constitutional due process to show that he personally injured Journey or that he was a party to inflicting those injuries. He also argues that the trial evidence was insufficient under Georgia's circumstantial-evidence statute, see OCGA § 24-14-6, because the evidence failed to exclude the reasonable hypothesis that Boyd inflicted Journey's injuries without Appellant's participation. We disagree and therefore affirm the trial court's denial of Appellant's motion for a directed verdict.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction." *Shelton v. State*, 313 Ga. 161, 168 (2) (869 SE2d 377) (2022) (citation and punctuation omitted). Evidence is sufficient as a matter of constitutional due process if "a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Fortson v. State*, 313 Ga. 203, 209 (1) (869 SE2d 432) (2022) (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). When evaluating the sufficiency of the evidence, "[t]his Court views the evidence in the light most

9

favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." Id. (citation and punctuation omitted).

Here, the trial evidence was sufficient as a matter of constitutional due process to support Appellant's convictions. Because there was trial evidence showing that Appellant and Boyd were Journey's only caretakers during the period when Journey sustained the fatal injuries and that those injuries were caused by non-accidental, direct force, the jury was authorized to conclude that either Appellant or Boyd or both were responsible for Journey's injuries and death. The jury was further authorized to conclude that Appellant was at least a party to the crimes based on Appellant's and Boyd's purported inability to explain Journey's extensive injuries. Specifically, in an attempt to explain Journey's injuries, Appellant said that he had administered CPR to Journey and that Journey had ingested "spoiled" formula, hit her head on a door when entering the emergency room, and received bruises from pulling up on the coffee table, and Boyd said that Journey had ingested "bad"

formula and hit her head on a coffee table. Appellant's and Boyd's statements failed to explain how Journey could have received such extensive injuries to her head, abdomen, arm, and leg while in their care, and the jury was entitled to disbelieve Appellant's account and conclude that Appellant was trying to cover up his participation in the crimes. See *Moore v. State*, 314 Ga. 351, 354-355 (877 SE2d 174) (2022) (concluding that "the jury was entitled to discredit [the defendant's] testimony and statements about the timing, extent, and cause of [her child's] injuries and find that [she] inflicted the fatal injury during the window of time in which medical experts estimated the blunt-force trauma occurred," where the child had been under the exclusive supervision of both the defendant and her boyfriend during the relevant time period). See also OCGA § 16-2-20 (b) (providing that a person is a party to a crime if, among other things, the person "[d]irectly commits the crime," "[i]ntentionally aids or abets in the commission of the crime," or "[i]ntentionally advises[ or] encourages . . . another to commit the crime"); *Lofton v. State*, 309 Ga. 349, 352-353 (1) (846 SE2d 57) (2020) (noting that,

11

"criminal intent," for purposes of establishing that a person is a party to the crime, "may be inferred from presence, companionship, and conduct before, during and after the offense" (citation and punctuation omitted)).

The evidence described above was likewise sufficient to support Appellant's convictions under OCGA § 24-14-6, Georgia's circumstantial-evidence statute, which provides that, when a charge is based on "circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Although Appellant contends that the evidence failed to exclude the reasonable hypothesis that Boyd alone inflicted the fatal injuries on Journey, "[w]hether alternative hypotheses are reasonable . . . is usually a question for the jury, and this Court will not disturb the jury's finding unless it is insufficient as a matter of law." *Frazier v. State*, 308 Ga. 450, 453 (2) (a) (841 SE2d 692) (2020).

Here, the jury was authorized to conclude that it was not reasonable to believe that Boyd alone inflicted the fatal injuries.

Journey was under the exclusive supervision of both Appellant and Boyd during the period when Journey received fatal injuries, and both Appellant and Boyd gave statements that downplayed the injuries Journey sustained while in their care and failed to account for the extensive damage to Journey's body. From this, the jury could conclude that it was unreasonable to believe that Boyd acted alone in committing the crimes. See *Moore*, 314 Ga. at 354-355 (holding that "the evidence was sufficient to enable the jury to reject as unreasonable the alternative hypothesis that [the defendant's boyfriend] alone was responsible for inflicting the blunt force trauma that led to [the defendant's child's] death" in part because the defendant had "downplayed the injuries [her child] received while in her care," thereby entitling the jury to disbelieve her explanations and find that she was responsible for inflicting the fatal injuries). Accordingly, Appellant has not shown that the trial evidence was insufficient to support his convictions as a matter of constitutional due process or under OCGA § 24-14-6.

3. Appellant argues that the trial court abused its discretion in

excluding evidence of Boyd's drug use. Appellant appears to contend that the trial court concluded that the evidence was extrinsic evidence of character subject to OCGA § 24-4-404 (b) ("Rule 404 (b)"), and that the trial court excluded it under that rule. Because Appellant contends that the evidence was intrinsic and relevant, he appears to argue that the court should not have applied Rule 404 (b) and should have instead assessed whether the evidence was admissible under OCGA § 24-4-403 ("Rule 403"). See *Smith v. State*, 307 Ga. 263, 272 (2) (c) (834 SE2d 1) (2019) (holding that "intrinsic" evidence is "outside the reach of Rule 404 (b)" (citation and punctuation omitted)). See also *Middlebrooks v. State*, 310 Ga. 748, 751 (2) (b) (854 SE2d 503) (2021) ("Intrinsic evidence must satisfy Rule 403."). Accordingly, Appellant faults the trial court for failing to conduct a Rule 403 analysis and argues that excluding the evidence under that rule would have been an abuse of discretion. We conclude, however, that the record belies Appellant's description of the trial court's evidentiary rulings, that the trial court did in fact assess the admissibility of the evidence under Rule 403, and that the

14

court did not abuse its discretion in excluding the evidence under that rule. This enumeration of error therefore fails.

In a pretrial hearing, the State moved to admit evidence of Boyd's drug use under Rule 404 (b) for the purpose of proving Boyd's motive. The evidence included a witness who would testify that during Journey's life, Boyd often used methamphetamine, unprescribed Xanax, and marijuana, and that "she would get people away so she could do drugs." The State argued that the evidence was admissible to show motive insofar as "[Journey] got in the way of her drug use and . . . [Boyd] essentially favored using drugs over taking care of her child." Over Boyd's objection, the trial court granted the State's motion, noting that the evidence was "tied in together" with events surrounding Journey's death.

At trial, Boyd renewed her objection to evidence of her drug use. In response, the trial court appeared to reverse course on its prior ruling, directing the State to not mention the drug use in its opening statement and to make a "detailed proffer" before any witnesses testified to the drug use. The State did not make such a

proffer, and, during the State's case in chief, the trial court sustained several objections when witnesses referenced Boyd's drug use.

Later at trial, Appellant asked the trial court to vacate its rulings excluding evidence of Boyd's drug use and to admit the evidence.[2] Appellant argued that the evidence should be admitted because it showed Boyd's motive, intent, and state of mind. But the trial court ruled that the evidence was inadmissible because "the probative value of that evidence[ ] is substantially outweighed by the danger of unfair prejudice in this case." Appellant then asked the trial court, "To be clear, Your Honor, for the record, you are not relying on [R]ule 404 (b)?" The trial court responded, "I am relying on 401, 402, 403, 404 (b) . . . . The Court believes it relied on the appropriate rules of evidence, took them all into consideration."

Here, Appellant has failed to show that the trial court abused its discretion in excluding the evidence of Boyd's drug use. As an initial matter, the record belies Appellant's contention that the trial

---

[2] We assume without deciding that this request preserved for ordinary appellate review Appellant's challenge to the court's exclusion of the drug use evidence.

court did not apply Rule 403 in assessing the admissibility of the evidence. Although the court did not cite a specific rule when issuing its preliminary rulings on the matter, when definitively ruling that the evidence of drug use was inadmissible, the court stated that it was "relying on" Rule 403 and expressly invoked the Rule 403 standard, concluding that evidence of Boyd's drug use was inadmissible because "the probative value of that evidence[ ] is substantially outweighed by the danger of unfair prejudice in this case." See OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Thus, contrary to Appellant's contention, the trial court applied Rule 403 in assessing the admissibility of the drug evidence.

Further, Appellant has not shown that the trial court abused its discretion in concluding that the evidence of Boyd's drug use was inadmissible under Rule 403. Appellant argues that the evidence

17

was highly probative because it would have allowed him to present a complete "picture of the circumstances of Journey's short life and her mother's continuing role in the abuse and neglect of her children" so that he could "attribute Journey's injuries and death directly to Ms. Boyd." But he fails to address the prejudicial nature of the drug use evidence, which could have created the potential for the jury to convict Boyd on an improper basis, namely, her character as a drug user. See *Hood v. State*, 299 Ga. 95, 103-105 (4) (786 SE2d 648) (2016) (holding that the trial court abused its discretion under Rule 403 in admitting evidence about the appellant's "past drug deals" in part because it "had a tendency to suggest that [the] [a]ppellant should be convicted because he was a seasoned drug dealer, the kind of man who preys on people's addictions, who repeatedly breaks the law, and who deserves to be punished"). Therefore, he has not shown that the trial court abused its discretion in concluding that the risk of unfair prejudice substantially outweighed the probative value of the drug use evidence.

4. Appellant argues that the trial court erred in failing to give

18

a requested jury charge on grave suspicion. We disagree.

In his written requests to charge the jury, Appellant asked for an instruction on grave suspicion stating that "[f]acts and circumstances that merely place upon the defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize a conviction of the defendant." The trial court denied the request, concluding, "It's adequately covered in the burden of proof charge and this charge as a whole," and Appellant's trial counsel objected. When charging the jury, the trial court instructed the jury, as relevant here, that the defendants were presumed to be innocent until proven guilty, that the State had the burden to prove every element of the indicted crimes beyond a reasonable doubt; and that neither mere association with persons involved in a crime nor mere presence at the scene of a crime constituted sufficient evidence to convict a person of being a party to a crime. The court did not instruct the jury on grave suspicion, and following the jury charge, Appellant reiterated his prior objection to the court's refusal to give

that instruction.

To determine whether a trial court erred in failing to give a requested jury instruction, we must "read and consider the instructions as a whole." *Stafford v. State*, 312 Ga. 811, 820 (4) (865 SE2d 116) (2021). Where the jury charge, taken as a whole, sufficiently instructs the jury on a point of law, a trial court does not err in failing to give an "unnecessary," "additional instruction." Id. at 820-821 (4).

Here, the trial court's instructions on reasonable doubt, the presumption of innocence, mere presence, and mere association adequately covered the requested grave suspicion charge. Thus, considering the complete instructions given to the jury, the trial court did not err in refusing to charge the jury on grave suspicion. See *Adkins v. State*, 314 Ga. 477, 483 (3) (877 SE2d 582) (2022) (holding that the trial court did not err in refusing "to give the requested charge on grave suspicion because the concept was covered in other jury instructions that the court did give to the jury," including its instructions "on reasonable doubt, the presumption of

20

innocence, and mere presence").

5. Appellant argues that trial counsel was constitutionally ineffective for failing to move to sever Appellant's trial from Boyd's trial after the trial court excluded the evidence of Boyd's drug use. This enumeration fails because Appellant failed to show deficient performance.

Before trial, the trial court denied Boyd's motion to sever her case from Appellant's. When asked whether Appellant had joined Boyd's motion to sever, trial counsel responded, "We indeed do not move to sever and would oppose it." At the hearing on Appellant's motion for new trial, Appellant's trial counsel testified that he chose to not move to sever Appellant's trial because it would have been "harder to make that case." Trial counsel explained that

> there was absolutely no evidence that [Appellant] did anything with [b]aby Journey other than care for her and [that he was] the only one who seemed to care for her. The only way we would be able to show that in this trial . . . was [to show] the . . . position of his loving concern for that baby versus the callousness of . . . Boyd . . . . I thought that the jury would be able to see they're both in the same household, but they do not stand in relation to what happened to this child in the same position.

Trial counsel testified that one way he sought to distinguish Appellant's position from Boyd's was through evidence of Boyd's drug use. As noted above, the trial court preliminarily ruled that evidence of Boyd's drug use would be admissible but ultimately excluded the evidence. When asked whether he reconsidered severance after the evidence was excluded, trial counsel testified, "[I]t was too late to sever it or move to sever or it didn't occur to me to do so."

In its order denying Appellant's motion for new trial, the trial court ruled that trial counsel's decision to not move for severance so Appellant could contrast Appellant's and Boyd's behavior toward Journey was an "objectively reasonable trial strategy and tactic."

To succeed on an ineffective-assistance-of-counsel claim, a defendant must show deficient performance by trial counsel and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Proving deficient performance requires a defendant to show that "no reasonable

22

lawyer would have done what his lawyer did or would have failed to do what his lawyer did not." *Evans v. State*, 315 Ga. 607, 611 (2) (b) (884 SE2d 334) (2023) (citation and punctuation omitted). To show prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022). "If [a defendant] fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part." Id.

Here, Appellant failed to show that his trial counsel performed deficiently. At the motion-for-new-trial hearing, trial counsel explained his strategy of attempting to show that Appellant was not a guilty party by contrasting Appellant with Boyd. And the transcript of closing arguments shows that, even after the drug evidence was excluded, trial counsel's strategy remained viable, as he was able to draw on points of contrast between Appellant and Boyd to argue that Boyd, rather than Appellant, was a guilty party. Specifically, trial counsel argued that Journey served as a living

23

reminder to Boyd of Journey's deceased father, giving Boyd a motive to harm Journey that Appellant did not share. Trial counsel also argued that, unlike Appellant, Boyd was possessive toward Journey and tried to hide Journey's injuries from others, suggesting that she was the one who inflicted the injuries. Trial counsel also contrasted the two co-defendants by describing Appellant as so blinded by love that he was unaware of what Boyd was doing to Journey.

Because Appellant has not shown that no competent counsel would have chosen to pursue trial counsel's strategy, Appellant's ineffective assistance claim fails. See, e.g., *Jackson v. State*, 281 Ga. 705, 707-708 (6) (642 SE2d 656) (2007) (holding that trial counsel was not deficient for failing to seek severance because his strategy of not severing "to enable the jury to focus their outrage on the co-defendant rather than [the defendant]" was reasonable).

*Judgment affirmed. All the Justices concur.*

Decided February 6, 2024.

Murder. Bartow Superior Court. Before Judge Howell, Senior Judge.

*Katherine M. Mason*, for appellant.

*Matthew W. Rollins, District Attorney, A. Brett Williams, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Stephany J. Luttrell, Assistant Attorney General*, for appellee.