**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten days**
**of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2016**

# In the Court of Appeals of Georgia

A16A1697. HILL-BLOUNT v. THE STATE.

PER CURIAM.

A jury found Corey Hill-Blount guilty of armed robbery and possession of a firearm during the commission of a crime; he was acquitted of theft by receiving stolen property and possession of marijuana. Hill-Blount appeals, asserting that there was an improper communication between the court bailiff and a juror and that the trial court abused its discretion in removing the same juror after deliberations had begun.[1] For the reasons that follow, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that two men with guns confronted the victim while she was working as a cashier at a

---

[1] Hill-Blount filed an earlier appeal in this court, but we dismissed it as untimely. *Hill-Blount v. State*, A16A0758 (dismissed April 5, 2016). The current appeal follows the trial court's order permitting Hill-Blount to file an out-of-time appeal.

convenience store. A third man came behind the counter and demanded money. He took a money bag and coin box from the cash drawer and the safe. The victim could not identify the robbers because their faces were covered, but she gave police a description of the clothing worn by the perpetrators.

Later that night, an officer initiated a traffic stop on a vehicle that had a headlight out. As he approached the car, the officer noticed that the occupants were wearing clothing similar to that issued in an earlier BOLO after the robbery. He also observed two of the occupants kicking items under the seat. The driver gave permission to search the car, and police discovered two guns and a large bag of change in the car. When Hill-Blount was confronted with the surveillance video showing that one of the robbers had worn the same clothing he had on when arrested, Hill-Blount confessed to the crime.

The case proceeded to trial, and, following a recharge requested during deliberations, one of the jurors asked, "[D]oes the past come in any way that would be relevant to this case?" The court replied that the defendant's past would be irrelevant. In a later colloquy, Hill-Blount's attorney expressed concern that the juror who asked the question might know something about Hill-Blount's past, and the bailiff stated, "He asked me before they ever went back the first time if I could get him a copy of [Hill-

Blount's] criminal history, and I told him that that was not available, we didn't have anything on him, nothing to go back to the jury." Hill-Blount's attorney did not object to any communication between the juror and the bailiff. The attorneys and trial judge discussed their concern about this juror bringing irrelevant information to the jury room and adjourned for the evening after deciding to address any issues with the juror in the morning.

The next morning, the jury foreman asked to address the court and counsel. According to the foreman, one juror cited to irrelevant Georgia Code sections in the jury room and another brought outside material, including a dictionary and religious books, into the jury room and persisted in reading the outside material to the other jurors, explaining that the material pertained to spiritual matters. The foreperson stated that this particular juror refused to stop reading and talking about his outside material, he would not participating in the discussion of the case with other jurors in a relevant manner, and he was "very disruptive." The same juror had requested a recharge on intent the previous day and asked about Hill-Blount's past criminal history. The State asked that the juror be excused and replaced with the alternate due to his disregard of the court's admonishment to decide the case solely on the evidence and law before it. Hill-Blount objected to the removal.

The trial court determined that "we have a wayward juror who has violated the directives of the Court," excused the juror, and replaced him with the alternate. The bailiff searched the jury room and located a dictionary and several printed religious materials, including a book titled "Saint Joan of Arc's Message for Today" and a magazine entitled "One Minute Wisdom."

1. In his first enumeration of error, Hill-Blount asserts that during jury deliberations the court bailiff improperly communicated with the juror. According to Hill-Blount, the bailiff's comment to the juror intimated that "there was a criminal history but it was not then 'available' to the jury." We find no reversible error.

The State concedes that it was improper for the bailiff to answer the juror's question about Hill-Blount's criminal history. See *Turpin v. Todd*, 271 Ga. 386, 389-390 (519 SE2d 678) (1999). However, Hill-Blount's trial counsel waived any claim of error by not voicing an objection when he was made aware of the improper communication. See *Lawson v. State*, 280 Ga. App. 870, 871 (1) (635 SE2d 259) (2006) (defendant waives issue of improper communication between the bailiff and jurors when counsel fails to move for a mistrial or object to judge's subsequent remarks to the jury); *Hanifa v. State*, 269 Ga. 797, 808 (6) (505 SE2d 731) (1998) (a defendant waives appellate review of an allegedly improper communication between the court

4

and the jury when, prior to verdict, defendant is aware of the communication and fails to voice an objection). Counsel who is aware of misconduct "cannot remain silent and take the chances of an acquittal for his client, and upon failure, make it a good ground for a new trial." *Hand v. State*, 205 Ga. App. 467, 468 (1) (422 SE2d 316) (1992).

Furthermore, even had trial counsel preserved the matter for appeal, Hill-Blount has failed to show that the improper communication was prejudicial. See *Causey v. State*, 319 Ga. App. 841, 843 (738 SE2d 672) (2013) (to disturb a jury's verdict, the improper communication must involve "statements that were so inherently prejudicial to the defendant 'that the verdict must be deemed inherently lacking in due process'"). The bailiff's statement in this case did not involve extrajudicial information, discussion of the facts or legal issues in the case, or improper conduct by the jurors themselves. See id.

Although Hill-Blount argues that the statement implied that he had a criminal background, we do not read the bailiff's innocuous statement to imply that Hill-Blount possessed a criminal record. When asked if he could get the jury a copy of Hill-Blount's criminal history, the bailiff responded, "that was not available, we didn't have anything on him, nothing to go back to the jury." If anything, this communication reflects that Hill-Blount had no criminal history, which is information favorable to the

defendant. In addition, the trial judge instructed the jury that any past history would be irrelevant to its consideration in this case. This enumeration of error does not set forth a basis for reversal.

2. Hill-Blount also contends that the trial court erred in removing a juror after deliberations had begun. However, it is well-established that "[t]he trial court has [broad] discretion to replace a juror with an alternate at any time in the trial, whether before or after submission to the jury." See *Murray v. State*, 276 Ga. 396, 398 (4) (578 SE2d 853) (2003). We find no abuse of discretion in this case.

The trial court here instructed the jury not to "go looking for other information," but to decide the case solely on the testimony and the exhibits admitted into evidence. Nonetheless, the following morning, the juror brought to the jury room a dictionary and a number of religious materials, and he refused to stop reading and talking about his outside material despite admonishments from the foreman. After the foreman brought the disruptive juror's conduct to the trial court's attention, the trial court spoke with the juror, who explained that he wanted to find out what "intent" meant. Contrary to Hill-Blount's assertion, the trial court did not excuse the juror "based solely on his use of a dictionary to look up a single word." The trial court listened to the foreperson's and juror's statements and excused the juror after determining that the

6

juror refused to decide the case solely on the evidence and the law charged by the trial court. Accordingly, the trial judge properly exercised his discretion in replacing this juror with the alternate. See *McGuire v. State*, 200 Ga. App. 509, 510 (3) (408 SE2d 506) (1991) (trial court did not err in replacing juror who violated court's instructions by visiting crime scene).

*Judgment affirmed. Division Per Curiam. All Judges concur.*