**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 25, 2022

S22A0630. CLARK v. THE STATE.

PINSON, Justice.

Anthony James Clark was found guilty of felony murder and associated crimes in connection with the February 2019 death of Stasha Baggett.[1] On appeal, Clark claims that, during his trial, a juror improperly communicated with a member of the victim's

---

[1] The crimes occurred on February 13, 2019. In April 2019, Clark was indicted on two counts of felony murder and one count each of armed robbery, robbery, and possession of methamphetamine. Clark was tried before a jury in February 2020 and found guilty on all counts. On February 19, 2020, he was sentenced as a recidivist to serve life in prison without the possibility of parole on one felony murder count plus a consecutive 15-year term for the drug possession count; the remaining counts merged or were vacated by operation of law. Clark filed a timely motion for new trial, which he amended through new counsel in May 2021. Following hearings conducted in July and October 2021, the trial court denied the motion on December 6, 2021. Clark filed a timely notice of appeal. The appeal was docketed to the April 2022 term of this Court and was thereafter submitted for a decision on the briefs.

family who was sitting in the audience. Clark contends that his trial counsel rendered ineffective assistance by failing to investigate properly or otherwise address the incident and that the trial court also failed to investigate the incident properly, depriving him of his right to a fair trial. But the record shows that counsel made reasonable efforts to address the juror issue, and any error on the part of the trial court has not been preserved for our review. So we affirm.

1. *Facts*

(a)  Late one evening in February 2019, Clark drove with a companion, Jami Johnson, to a home in Murray County to meet Baggett. Clark and Johnson regularly used methamphetamine together. According to Clark, the pair were planning to meet Baggett to buy some of the drug. According to Johnson, she did not know whom she and Clark were driving to meet but believed Clark intended to "rip off"—i.e., steal drugs or money from—whoever it was.

2

According to Johnson, after they arrived at the home, Clark went inside while she remained in the car. Ten to fifteen minutes later, Clark emerged. He got in the driver's seat of the car and told Johnson that he had told Baggett that Johnson "had the money for the dope." Baggett followed Clark and, reaching the car, handed Clark a bag of meth through the driver's side window. Clark handed the bag to Johnson and asked if she wanted it. Johnson, having no money, "just stare[d] at him." In Johnson's words, "Clark looks at me and says f**k it and puts the car in reverse." Baggett "jumped onto the car trying to get her dope back." Clark sprayed Baggett with pepper spray and backed the car into a wooded area, slamming Baggett—who was still holding onto the driver's side mirror—into a tree.

Clark jumped out of the car and fled. A resident of the home, who had heard the commotion, came outside and called 911. Baggett died at the scene.

Testimony and crime-scene photos established that Clark's car had backed up with such force that it uprooted a small tree and

"sheared off" another in two places. The driver's side mirror was dangling from the car by a wire, and the tree that the victim collided with had her hair embedded in it. The victim's body had abrasions consistent with being dragged along the ground. The medical examiner testified that the cause of death was blunt-force trauma to the torso.

Clark and Johnson were both arrested. Johnson told police that she had hidden the meth they had taken from Baggett under a tarp near Clark's car, and she later retrieved the bag for a GBI agent whom she accompanied back to the scene. The bag contained 6.499 grams of meth.

Clark testified at trial. He said that when Baggett followed him to the car, she became "irate" after she saw that he was with Johnson and so, "to keep from a physical altercation happening," he "put the car in reverse and pulled pepper spray." He said that he "panicked" and "jumped out and ran."

(b) At trial, Clark told his trial counsel that, during Johnson's testimony, he had noticed a juror "mouthing" something to one or

4

more of the victim's family members, who were seated in the gallery of the courtroom. Clark reported this to counsel as soon as Johnson's testimony concluded, just before a recess, and counsel notified the court that he "may have something to discuss with the Court" after the break. After a 23-minute break, at a bench conference before the jury reentered the courtroom, counsel told the trial judge about Clark's allegation. He said he had investigated during the recess and believed it was "just a glance by a jury member out into the audience." Still, counsel asked the trial court to give the jury a cautionary instruction. The court agreed and, when the jury reentered the courtroom, the judge reminded the jurors to avoid communications and contact with anyone outside the jury, instructing them to "be abundantly cautious about where you glance or whether you hold a glance or who you talk to . . . in the hall."

In his motion for new trial, Clark raised the alleged juror incident as the basis for claims of ineffective assistance of counsel and violation of his right to a fair trial. At the hearing, Clark testified that he had seen a female juror in the front row of the jury

5

box "mouthing words to the victim's family" and that one of these family members "was shaking her head" in response. He also testified that his mother had seen the incident.

For his part, trial counsel testified that, during the recess following Clark's reporting of the incident, he had spoken with the bailiffs and other court personnel, as well as some of Clark's family members. According to counsel, "no one indicated that they had seen anything other than just routine glancing and so forth, as jurors do during the course of a trial." While admitting that "in hindsight," he "probably should have" asked the court to question the juror, counsel testified that at the time, based on his significant trial experience, his own observations, and the investigation he undertook, he "was satisfied" that he had taken the appropriate steps. He also testified that, during his representation of Clark, Clark had a tendency to "exaggerate" and make statements that were "outlandish."

In denying Clark's motion for new trial, the trial court found that Clark's testimony was "not credible," that there was "no evidence of juror misconduct," and that trial counsel's actions "were

6

appropriate and reasonable."

2. *Analysis*

(a)     Clark contends that his trial counsel rendered constitutionally ineffective assistance by failing to adequately investigate his report of juror misconduct. To succeed on a claim of ineffective assistance, a defendant must establish both that his counsel's performance was deficient and that he was prejudiced as a result of that deficient performance. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984)).

To prove deficient performance, a defendant must establish that counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." Id. (citation omitted). To overcome the "strong presumption" that counsel performed reasonably, the defendant must show that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id.

7

(citation omitted). To prove prejudice, a defendant must establish that there is a "reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. A reasonable probability is a probability "sufficient to undermine confidence in the outcome" of the trial. *Neal v. State*, 313 Ga. 746, 751 (3) (873 SE2d 209) (2022) (citation omitted). An ineffective-assistance claim fails if the defendant fails to establish either deficient performance or prejudice. See *Washington*, 313 Ga. at 773 (3).

In reviewing a trial court's determination on an ineffective-assistance claim, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the relevant legal principles to the facts. See *Sullivan v. State*, 301 Ga. 37, 40 (2) (799 SE2d 163) (2017).

Here, Clark contends that trial counsel should have insisted that the trial court question the juror under oath about whether she had communicated with the victim's family member or had predetermined Clark's guilt, and that his failure to do so amounts to

deficient performance.

But we cannot agree that trial counsel's actions in addressing Clark's allegation about the juror were "so patently unreasonable that no competent attorney would have followed such a course." *Washington*, 313 Ga. at 773 (3) (citation omitted). To the contrary, the record shows that counsel made reasonable efforts to address the juror issue. The trial transcript makes clear that trial counsel investigated Clark's claim immediately and brought the issue to the attention of the prosecutor and the court. At the motion-for-new-trial hearing, trial counsel explained that he investigated by asking courtroom officers and Clark's family about the issue, and none of them reported anything unusual. Trial counsel also testified that perhaps he should have asked the trial court to question the juror, but "hindsight has no place in an assessment of the performance of trial counsel." *Keener v. State*, 301 Ga. 848, 850 (2) (804 SE2d 383) (2017) (cleaned up). Trial counsel's decision to timely and diligently investigate as he did falls well within the bounds of reasonable and competent performance. Further, the trial court was authorized to

9

credit trial counsel's testimony about his investigation and to discredit Clark's testimony about the incident, see *Sullivan*, 301 Ga. at 40 (2), and did not clearly err in doing so. Clark failed to establish that counsel's performance was deficient, so his claim of ineffective assistance fails. See *Bozzie v. State*, 302 Ga. 704, 711 (4) (c) (808 SE2d 671) (2017) (trial counsel did not render deficient performance by failing to pursue an incident of juror misconduct that he reasonably believed was harmless based on an investigator's account of the incident).

(b) Clark also contends that the trial court should have sua sponte conducted its own investigation into the juror's alleged communication with the victim's family. This alleged error is not preserved for our review because Clark did not raise any objection below to the trial court's handling of the juror issue. See *Grier v. State*, 305 Ga. 882, 887 (3) (828 SE2d 304) (2019) (failure to object at trial to alleged error results in waiver of appellate review). And this is not the kind of alleged error for which plain-error review is available. See *Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22)

10

(2020) (listing limited categories of alleged errors for which plain-error review is available). So this claim is not subject to our review.

*Judgment affirmed. All the Justices concur.*